UUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08cv99-RJC

| | | |
|---|---|---|
| RAJPUTANA RIDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KEITH WHITENER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court upon Plaintiff's Complaint (Doc. No. 1) and

Amended Complaint (Doc. No. 44) pursuant to 42 U.S.C. § 1983. Also before the Court is

Plaintiff's Motion to Amend the Reply (Doc. No. 47), Plaintiff's self-styled Motion for

Summary Judgment (Doc. No. 50), and Defendant's Motion for Summary Judgment (Doc. No.

51).

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The record in this case shows that Plaintiff was convicted on October 29, 1998 of second

degree murder in Wayne County, North Carolina. N.C. Dept. of Correction Offender Public

Information, http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offender

ID=0344289 (last visited July 29, 2011).[1] He was sentenced to 12 years and nine months in

prison. Id. Plaintiff was housed at various Department of Correction (DOC) facilities

throughout his incarceration. (Doc. No. 52-2 at 7-8)[2] On February 7, 2007, he was transferred

---

[1]The Court may take judicial notice of matters of public record. Philips v. Pitt County
Memorial Hospital, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

[2]Unless otherwise indicated, the page numbers in docket citations are those assigned by
CM/ECF, the Court's electronic filing system.

from Lanesboro Correctional Institution (LCI) to Alexander Correctional Institution (AXCI), where he remained until March 5, 2009.  (Id. at 7).

On August 26, 2008, Plaintiff filed a § 1983 complaint against Keith Whitener, Superintendent of AXCI, in his individual capacity, alleging that Whitener failed to act on his repeated complaints of "sexual harassings [sic] and assaults" by male officers assigned to segregation.  (Doc. No. 1 at 3).  Plaintiff contends that the male officers have repeatedly sexually harassed and sexually assaulted him, that he has filed numerous grievances and written letters to Whitener complaining of the actions of the male officers, that Whitener has ignored his complaints and refused to investigate them, and that the harassment and assaults have continued. (Id. at 3-6).  Plaintiff seeks injunctive relief requiring Defendant Whitener to stop the male officers assigned to segregation from "harassings [sic] and bribery to coerce [him] to exhibit sexual gratification" and from "inappropriate[ly] touching [him]" during pat downs and when escorting him in handcuffs.  (Id. at 4).  Plaintiff also seeks an injunction requiring Whitener to thoroughly investigate his claims of sexual harassment and sexual assault.  (Id.)

Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. No. 11) and a Motion for Leave to File a Supplemental Complaint (Doc. No. 33), both of which were granted (Doc. No. 42).  Defendant filed an answer to the original complaint (Doc. No. 17), Plaintiff filed a Reply (Doc. No. 29), and on March 3, 2009, the Court denied Plaintiff's Motion for Preliminary Injunction.  (Doc. No. 41).

Plaintiff filed an Amended Complaint against Whitener, alleging sexual harassment by DOC officers that occurred after he had filed the initial § 1983 Complaint.  (Doc. No. 44). Plaintiff did not move to add any of the individuals named in these allegations as defendants in his § 1983 action.  Defendant filed an Answer to the Amended Complaint (Doc. No. 45),

Plaintiff filed a Reply (Doc. No. 46) and a Motion to Amend the Reply (Doc. No. 47), and then

Plaintiff also filed a Motion for Summary Judgment (Doc. No. 50), followed by Defendant's

cross motion for summary judgment. (Doc. No. 51). Finally, Plaintiff filed a Response to

Defendant's Motion for Summary Judgment on May 21, 2010. (Doc. No. 62).[3]

## II.    LEGAL STANDARD

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his

pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)). *Pro se* pleadings are held to a less stringent standard than those drafted by

attorneys. Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam) (<u>citing</u> <u>Haines</u>, 404 U.S. at

520). Even under this less stringent standard, however, a *pro se* complaint may still be subject to

summary dismissal. <u>Id.</u> at 10. The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it

should do so. <u>Id.</u> (<u>citing</u> <u>Haines</u>, 404 U.S. at 520-21). A court may not, however, construct the

plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993).

Nor should a court "conjure up questions never squarely presented." Beaudett v. City of

Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[3]During the pendency of this case, Plaintiff has filed numerous (15) documents titled "Declaration" in which he repeats facts and arguments already raised in his pleadings or adds new facts and claims. The record demonstrates that Plaintiff was aware that he could move to amend his Complaint to add new factual allegations and claims (Doc. Nos. 11, 33, 47: Motions to Amend; Doc. No. 44: Amended Complaint). Except as outlined in the body of this Order, the Court has not granted Plaintiff leave to amend his Complaint. Notwithstanding his *pro se* status, Plaintiff will not be permitted to evade the Federal Rules of Civil Procedure and raise new claims and make new factual allegations except by way of amendment. Therefore, the Court will not consider factual allegations or claims made in Plaintiff's documents titled "Declarations" (Doc. Nos. 2, 6, 12, 14, 16, 18, 19, 21, 22, 24, 27, 28, 30, 35, and 38) that were not included in the Complaint or Amended Complaint.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his or her pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

III.    DISCUSSION

A.    Complaint

Plaintiff does not allege that Defendant Whitener sexually assaulted or harassed him. Rather, he alleges that male officers in the segregation units at AXCI sexually harassed and

4

sexually assaulted him and that Whitener was deliberately indifferent to that fact despite

Plaintiff's repeated grievances and letters detailing his allegations. To establish supervisory

liability on the part of Whitener for the actions of his subordinates, Plaintiff must demonstrate

that (1) Whitener was actually or constructively aware that his subordinate(s) were engaged in

conduct that posed a pervasive and unreasonable risk of constitutional harm to Plaintiff; (2)

Whitener's response to that knowledge was so inadequate as to show deliberate indifference to

that risk; and (3) there was a causal link between Whitener's inaction and the constitutional

injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

To establish a claim that prison conditions violate the Eighth Amendment, a plaintiff

must show both an objectively serious deprivation of a basic human need and that prison

officials acted with a "sufficiently culpable state of mind." Odom v. South Carolina Dept. of

Corrections, 349 F.3d 765, 770 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 298

(1991)). "Only extreme deprivations are adequate to satisfy the objective component of an

Eighth Amendment claim regarding conditions of confinement." Odom, 349 F.3d at 770

(quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)) (internal quotation omitted).

"[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant

physical or emotional injury resulting from the challenged conditions or demonstrate a

substantial risk of such serious harm resulting from the prisoner's exposure to the challenged

conditions." Id. (internal quotation marks omitted).

The requisite state of mind of prison officials is one of "deliberate indifference to inmate

health or safety." Odom, 349 F.3d at 770 (internal quotation and citations omitted). Deliberate

indifference is demonstrated if a prison official "knows of and disregards an excessive risk to

inmate health or safety." Id. (internal quotation and citations omitted). Additionally, "the

5

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (internal quotation and citations omitted). A prison official may be found free of liability, however, if he responded reasonably to a known risk, "even if the harm ultimately was not averted." Id.

In his Complaint, Plaintiff makes vague allegations of sexual harassment and sexual assault by unnamed male AXCI corrections officers, who he contends are homosexual. (Doc. No. 1). Plaintiff asserts that he was harassed and assaulted during both periods of incarceration at AXCI, the first beginning in 2004 and the second in 2007, and that all of his grievances and requests that witnesses' statements be gathered were ignored by Defendant. (Id. at 4-5). Specifically, he contends that he repeatedly filed "grievences [sic] and letters seek [sic] help since 2004 to 2005 and 2007 to 2008" and that his grievances were regarding "the ongoing sexual abuse of gay male officers that has [sic] been following me from prison to prison." (Doc. No. 1 at 2 ¶ III B. 1-2). He partially identifies two grievances, one that was rejected on May 7, 2007, and the other that was rejected on June 25, 2008, both for lack of supporting evidence. (Id. at ¶ III B 3). Plaintiff does not provide a grievance number for either, describe the particular incidents of harassment or assault, or provide the dates upon which they allegedly occurred.

In his Answer to Plaintiff's Amended Complaint, Defendant provided a copy of the June 25, 2008 grievance referenced in the Complaint.[4] (Doc. No. 45-2, Ex. B: Grievance No. 4870-S-08-186). The grievance alleges that:

> Since 2004 housed at Alexander segregation, I had filed grievances and forward [sic] written complaints to your office and Boyd Bennett of being sexual [sic] harassed and abused by male prison officials. From Lanesboro back to Alexander

---

[4]The grievance actually was received by the Inmate Grievance Board for a Step Three review on June 25, 2008 and was rejected on July 8, 2008. (Doc. No. 45-2 at 2).

on Feb. 7/07 same day I was physically degraded then assualted [sic] and dragged to segregation. The sexual harassings [sic] and abuses had started again. They are trying to intimidate me with the use of force with hand cuffs and shackles, retaliation and tauntings [sic] to coerce me into exhibiting sexual gratification and to return to regular population.

(Id. at 3). In a letter accompanying the grievance, Plaintiff states that he was deliberately placed in a cell facing the unit's podium so that male guards could coerce him into "exhibiting sexual gratification." (Id. at 5-6). He contends that his repeated requests for a transfer to a different cell had been denied. (Id. at 6).

Plaintiff has failed to identify an Eighth Amendment violation with respect to his allegations of sexual harassment. Other than taunting, he does not specify any actions prison guards allegedly took to "coerce" him into "exhibiting sexual gratification."[5] Mere allegations of verbal abuse, or taunting, however, do not state an Eighth Amendment violation. McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (explaining that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment") (citation omitted); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("[A]s a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.") (internal quotation and citation omitted); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986) (holding verbal harassment is not actionable under § 1983) (citation omitted); Cole v. Cole, 633 F.2d 1083, 1091 & n.11 (4th Cir. 1980) (absent accompanying allegation of harm, allegation of verbal harassment and abuse failed to state a

---

[5]Plaintiff's allegation from Grievance No. 4870-S-08-186 that he was "physically degraded," assaulted, and dragged to segregation on his first day at AXCI is not included in his Complaint or Amended Complaint. However, the Court notes that this incident was fully investigated and resulted in disciplinary action against Plaintiff for disobeying an order and using profane language. (Doc. No. 52-2 at 14).

claim).

Additionally, the Prison Litigation Reform Act (PLRA) requires that a prisoner allege a

physical injury in order to recover damages. See 42 U.S.C. § 1997e(e) (2006) (stating inmate

cannot recover monetary damages for emotional distress unless he can demonstrate physical

injury). Plaintiff has not identified any physical injury connected to the alleged sexual

harassment.[6] Nor has Plaintiff cited a single instance of harm suffered at the hands of another

inmate as a result of the alleged sexual harassment by guards. Plaintiff's claim for permanent

injunctive relief, on the other hand, is moot because he was transferred from AXCI in 2009 and

subsequently released from prison in August, 2010.[7] Rendelman v. Rouse, 569 F.3d 182, 186

(4th Cir. 2009) ("[A] a prisoner's transfer or release from a particular prison moots his claims for

injunctive and declaratory relief with respect to his incarceration there.") (citing Incumaa v.

Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th

Cir. 1986)).

Even if Plaintiff could proceed without an allegation of physical injury, the facts of this

case still warrant dismissal. Plaintiff has failed to show that a genuine issue of material fact

exists with respect to whether Whitener displayed deliberate indifference to Plaintiff's

continuous allegations of sexual harassment. See Odom, 349 F.3d at 770. The record shows that

on the occasions that Plaintiff complied with the ARP rules, his grievances were investigated.

(Doc. No. 45-2 at 2-10; Doc. No. 45-3 at 2-6; Doc. No. 45-5 at 2-4; Doc. No. 47-1 at 3; Doc. No.

---

[6]In support of his Complaint, Plaintiff provided "declarations" from a number of prison inmates, none of which describe any type of sexual mistreatment of Plaintiff other than taunting or verbal harassment. (Doc. No. 38).

[7] Supra N.C. DOC Offender Public Information.

50 at 18, 19, 26). Indeed, Plaintiff refers to one of those investigations in a grievance filed on

October 23, 2008. (Doc. No. 46 at 11: "Oct. 14/08 the date you sent me a questionaire [sic]

conducted by St. Hall pertaining to my repeated complaints of sexual harassings [sic] and

torturings [sic] of male officials to coerce prisoner to engage in sexual acts[.]"). The fact that

each of Plaintiff's grievances was found to be without merit is not evidence of deliberate

indifference on Whitener's part.

Nor is the sheer volume of grievances submitted by Plaintiff evidence that his complaints

of sexual harassment were legitimate. To the contrary, it appears from the summary judgment

evidence that Plaintiff was engaging in prohibited sexual behavior by choice and not through

coercion. During his 12 years and nine months in the DOC, Plaintiff had 114 infractions, at least

49 of which were for masturbating in front of correctional staff. Supra NC DOC Offender

Public Information. Significantly, Plaintiff accrued 27 infractions for masturbation prior to his

first transfer to AXCI on August 2, 2004. (Id.; Doc. No. 52-1 at 7-8). Plaintiff made similar

allegations of sexual harassment at some of those other prisons.[8]

---

[8]The following excerpt from Plaintiff's Motion for Summary Judgment describes
incidents of alleged sexual harassment prior to his first incarceration at AXCI:

>        In 2002 at Brown Creek Corrections plaintiff develope [sic] serious
> anxiety which lead [sic] inmates to taunt him on a daily basis about it. A gay
> male officer was aware of the taunts and started bringing him art supplies from
> home to become friends. A month later he was locked up on the segregation unit.
> This when [sic] the officer would come to see him and asked to see his penis as a
> favor to him for bringing him art supplies. Next the officer asked him to stroke
> himself while he look [sic] on. An [sic] exchange, the officer would bring art
> supplies and cigarettes. . . . He was transfered [sic] to the mental health residential
> at Foothill [sic] Correction. At Foothill [sic] Correction he met more gay male
> officials who gave every hint they wanted to see him stroke himself. An [sic]
> exchange, they gave him extra food tray [sic] and let him do most of anything he
> wanted. This went on until he was inappropriately groped during a pat-down
> returning from outside recreation. After the incident he requested to be returned

While at Marion Correctional Institution ("MCI"), where he was housed before his first

incarceration at AXCI, Plaintiff filed at least one grievance alleging "sexual [sic] seductive

stalking harrasment [sic] foul aggressive behavior" by unnamed male officers at the prison.

(Doc. No. 47-1 at 6). This grievance was rejected because Plaintiff failed to follow ARP rules.

(Id.). Plaintiff was at MCI for less than three months, during which time he accrued six

infractions, two of which were for masturbation. (Doc. No. 52-1 at 7-8); supra N.C. DOC

Offender Public Information).

Plaintiff was transferred to AXCI on August 2, 2004. (Doc. No. 52-1 at 7). Within 24

hours of his arrival, Plaintiff committed three infractions, one of which was masturbating in front

of a prison official. Supra N.C. DOC Offender Public Information. While at AXCI, he filed at

least two grievances alleging sexual harassment by homosexual employees, both of which were

found to be without merit. (Doc. No. 50 at 19). Subsequently, Plaintiff was transferred from

AXCI to LCI on April 6, 2005. (Doc. No. 52-1 at 7). During his 22 months at LCI, he had three

infractions for masturbation. Supra NC DOC Offender Public Information. Also while there,

Plaintiff filed at least one grievance alleging, among other things, that the majority of the male

employees at LCI and other North Carolina correctional institutions were homosexual or

---

> back to regular population. He was then transferred to Marion Correction where
> he was inappropriately groped again by a gay male officials [sic] doing a routine
> pat-down that clearly these officials used to covered [sic] up their invasive [sic] of
> his private area. After threated [sic] the officer who assaulted him he was locked
> up and transferred to Alexander Correction in 2004. No later than the second day
> of his arrival did the constant sexual harassings [sic] of male officials had begun.

(Doc. No. 50 at 8-9). The Court notes that during his incarceration at Brown Creek and
Foothills, Plaintiff was convicted of ten infractions, six of which were for masturbation. (Doc.
No. 52-1 at 7-8); supra N.C. DOC Offender Public Information.

bisexual and that he was given extra privileges and advantages by guards in exchange for

"performance of self sexual gratification" in their presence. (Doc. No. 47-1 at 9-12). This

grievance was found to be without merit. (Id. at 12.).

Plaintiff was transferred back to AXCI on February 7, 2007. (Doc. No. 52-1 at 7). In his

first three days at AXCI, Plaintiff incurred six disciplinary infractions, three for masturbating in

the presence of correctional staff. (Doc. No. 52-1 at ¶¶ 9-10; Doc. No. 52-2 at 13-14.). He was

placed on Intensive Control (ICON), where he remained until December 4, 2007 due to his

inability to remain infraction free. (Doc. No. 52-1 at ¶ 10). During his 10 months on ICON,

Plaintiff amassed an additional 20 infractions, 11 of which were for masturbation. (Id., Doc. No.

52-2 at 12-14). On December 4, 2007, Plaintiff was demoted to Maximum Control (MCON)

because of his continued inability to remain infraction free. (Doc. No. 52-1 at ¶ 10). Between

December 4, 2007 and March 5, 2009, when he was transferred to Scotland Correctional

Institution (SCI), Plaintiff incurred an additional 13 infractions, two of which were for

masturbation and one of which was for making false allegations against staff. (Doc. No. 52-1 at

7; Doc. No. 52-2 at 11-12). Within 24 hours of his transfer to SCI, Plaintiff incurred two

infractions, one of which was for masturbation. (Doc. No. 52-2 at 11).

In sum, the summary judgment evidence suggests that Plaintiff chose to engage in

prohibited sexual behavior. Therefore, any "excessive risk to [Plaintiff's] health or safety,"

Odom, 349 F.3d at 770 (internal quotation marks and citations omitted), appears to have been

self-generated. Notwithstanding that fact, his complaints of sexual harassment at AXCI were

investigated. Furthermore, contrary to Plaintiff's assertion that guards were trying to make him

vulnerable to sexual assault in the general population, AXCI officials removed Plaintiff from the

general prison population and placed him in increasingly strict control units, where his contact

with other prisoners was more limited.

Based upon the foregoing, the Court finds that Plaintiff has failed to forecast any evidence to establish that there is a genuine issue of material fact in regard to his allegations of deliberate indifference on the part of Whitener. Therefore, Defendant's Summary Judgment Motion shall be granted with respect to this claim.

**B.    Amended Complaint**

Plaintiff's Amended Complaint alleges three incidents of sexual harassment that occurred after he filed his original Complaint. (Doc. No. 44). In Allegation One, Plaintiff alleges that on October 6, 2008, he was strip-searched after an outside medical appointment, according to protocol. But rather than being allowed to redress, Plaintiff was forced to walk back to his cell in his boxer shorts. Plaintiff further alleges that the escorting officer, Sgt. Hicks, made sexual comments and whistled at him during the walk to segregation. He claims that Sgt. Hick's purpose was to humiliate him and to inflict psychological pain. (Doc. No. 44 at 2). Plaintiff filed a grievance regarding the incident on October 8, 2008. (Doc. No. 47-1 at 2). It was returned to Plaintiff because a prior grievance he had filed had not completed Step Two of the grievance process.[9] (Id.).

The second alleged incident occurred on October 14, 2008, when prison medical personnel came to Plaintiff's cell to investigate an allegation that Plaintiff had been raped by other inmates, which Plaintiff denies ever having reported. Plaintiff contends that the medical staff questioned him in his cell where other inmates could hear the sexual nature of the questions

---

[9]The record shows that Plaintiff had filed grievances on September 12, and September 30, 2008, both of which also were returned because Plaintiff had previously filed a grievance that had not completed Step Two of the process. (Doc. No. 50 at 20-21).

asked of him, and that this incident was simply another attempt by prison officials to humiliate him, inflict psychological pain, and expose him to a substantial risk of being preyed upon by other inmates in the general population. (Doc. No. 44 at 3). Plaintiff filed a grievance regarding this incident, along with the "boxer shorts" incident, on October 23, 2008. (Doc. No. 46 at 11). That grievance was likewise returned to Plaintiff because he had a previously-filed grievance that had not completed Step Two of the process. (Id.)[10]

Finally, Plaintiff alleges that on November 22, 2008, Officer Huffman came to his cell and verbally harassed him. (Doc. No. 44 at 3). Plaintiff filed a grievance the same day, which was investigated and found at Step One to be without merit. (Doc. No. 45-5 at 2-4). Plaintiff did not appeal to Step Two of the grievance process. (Id. at 2). Instead, the record shows that he agreed with the Step One response that his grievance was without merit. (Id.) Defendant contends that Plaintiff failed to exhaust his administrative remedies with respect to the incidents described in his Amended Complaint.

Under the PLRA, 42 U.S.C. § 1997e(a) (2006), an inmate is required to exhaust any "available" administrative remedies before pursuing a 42 U.S.C. § 1983 action in federal court. The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory and courts lack the authority to waive that requirement. Id. at 524. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of [the

_____

[10]The record shows that in addition to grievances filed on September 12, September 30, and October 8, 2008, Plaintiff had filed grievances on October 11, October 14, and October 22, 2008, all of which were returned because a previously filed grievance had not completed Step Two of the process. (Doc. No. 46 at 8-10).

13

administrative remedy]."  Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).  However, "a

prisoner does not exhaust all available remedies simply by failing to follow the required steps so

that remedies that once were available to him no longer are."  Id. (citation omitted).  Instead, "a

prisoner must have utilized all available remedies in accordance with the applicable procedural

rules, so that prison officials have been given an opportunity to address the claims

administratively."  Id. (internal quotation and citation omitted).

The North Carolina DOC provides an administrative remedy procedure (ARP) for

prisoner complaints.  Step One of the procedure allows for the filing of grievances on a Form

DC-410.  (Doc. No. 45-4, Ex: D: NC DOC ARP at § .0304(a)).  Under the rules, the inmate must

receive a formal written response to his grievance within 15 days from the date on which the

grievance is accepted.  (Id. at § .0307(f)(1)).  Should the inmate decide to appeal, he will receive

a Step Two written response within 20 days from the appeal request.  (Id. at § .0307(f)(2)).  And

should the inmate decide to appeal further, he will receive a Step 3 written response within 70

days from the date of that appeal.  (Id. at § .0307(f)(3)-(4)).  Relevant here, the rules prohibit an

inmate from submitting a new grievance before all previously filed grievances have completed

Step 2 or been resolved.  (Id. at § .0304(b)).  A grievance may be rejected because, among other

reasons, "[t]here has been a time lapse of more than one year between the event and submission

of the grievance" or if it requests a remedy "for more than one incident."  (Id. at § .0306(b)(2),

(4)).

Plaintiff contends that he would have been time-barred under the ARP from filing

grievances regarding the incidents alleged in his Amended Complaint had he waited to file them

until after his previously-filed grievances had completed Step Two.[11]  This argument is not based

in fact.  Under ARP rules, an inmate has up to one year after an event to file a grievance,

whereas the DOC has no more than 40 days in which to process a grievance through Step Two.

(Doc. No. 45-4, Ex: D: NC DOC ARP at §§ .0306(b)(2) & .0307(b)(d), (f)(1)-(2)).  Therefore, an

inmate has the ability to file multiple grievances within a one-year period.  The fact that

Plaintiff's filings were so prolific that they may have interfered with his ability to file all of his

particular grievances within the one-year statute of limitations[12] does not exempt him from

complying with ARP rules.

Plaintiff was released from DOC custody on August 30, 2010.  Supra N.C. DOC

Offender Public Information.  He has provided no evidence that he resubmitted his grievances

and pursued them through Step Three prior to his release.  Consequently, Plaintiff failed to

exhaust his available remedies regarding the incidents alleged in his Amended Complaint.

C.      Legal Materials Tampering Claim

In his Motion for Summary Judgment, Plaintiff devotes a page-and-a-half to allegations

that AXCI officials tampered with his legal materials on February 7, 2007, the day he returned to

AXCI.  (Doc. No. 50 at 3-5).  These allegations do not appear in either his Complaint or his

Amended Complaint.  Because Plaintiff has not sought leave to further amend his Complaint to

---

[11]According to Plaintiff, he did not pursue his grievance against Officer Huffman through
Steps Two and Three of the process because to have done so would have meant missing the
deadline to file another grievance.  (Doc. No. 46 at 2).

[12]Between February 7, 2007 and March 5, 2009, when he was transferred to SCI, Plaintiff
filed at least 18 grievances at AXCI that were returned because a previously-filed grievance had
not completed Step Two or were rejected because he failed to comply with ARP rules.  (Doc.
No. 37 at 4; Doc. No. 46 at 8-12; Doc. No. 47-1 at 1-3; Doc. No. 50 at 20-28).  He filed at least
three more that were accepted for investigation.  (Doc. No. 45-2 at 2-10; Doc. No. 45-3 at 2-6;
Doc. No. 45-5 at 2-4).

add these allegations, the Court will not consider them.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED that**:

1. Plaintiff's Complaint (Doc. No. 1) and Amended Complaint (Doc. No. 44) pursuant to 42 U.S.C. § 1983 are **DISMISSED**,

2. Defendant's Motion for Summary Judgment (Doc. No. 51) is **GRANTED**,

3. Plaintiff's Motion to Amend the Reply (Doc. No. 47) is **GRANTED**, and

4. Plaintiff's Motion for Summary Judgment (Doc. No. 50) is **DENIED**.

Signed: August 9, 2011

Robert J. Conrad, Jr.
Chief United States District Judge